United States Court of Appeals,

Fifth Circuit.

Nos. 96-11088, 96-11463.

SUTTER CORPORATION, a California corporation, Plaintiff-Appellee,

v.

P & P INDUSTRIES, INC., an Oklahoma corporation; James Patton, an individual; and Paul Patredis, an individual, Defendants-Appellants.

Oct. 27, 1997.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and BENAVIDES and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

I.

Facts & Procedural History

This case presents an opportunity to resolve several questions regarding the appropriate district court to confirm or vacate an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9 and 10. The appellee Sutter Corporation ("Sutter") manufactures post-operative rehabilitation devices. On March 1, 1993, P & P Industries, Inc. ("P & P"), formed by Paul Patredis and James Patton, entered into an exclusive Agency Agreement with Sutter, whereby P & P would represent (sell and rent) Sutter's products for a period of five years with the option to renew for two more five year periods. On August 14, 1995, Sutter unilaterally terminated its agreement with P & P and allegedly hired away all of P & P's sales staff. On that date Sutter

1

delivered to P & P a demand for arbitration, filed with the American Arbitration Association ("AAA") in Dallas, Texas, on August 10, and a complaint to compel arbitration, filed in the Federal District Court for the Southern District of California on August 11, 1995.[1]

On August 17, 1995, P & P filed an action against Sutter in the Federal District Court for the Western District of Oklahoma, alleging that Sutter had materially breached the Agency Agreement ("contract claims") and had committed various tortious acts at the time of the breach ("tortious interference claims"). Sutter moved to stay the action in Oklahoma pending arbitration under § 3 of the Federal Arbitration Act ("FAA").[2] The contract between Sutter and P & P contained an arbitration clause which provided that:

> [a]ny controversy, claim, or breach arising out of or relating to this Agreement which the parties are unable to resolve to their mutual satisfaction shall be resolved by arbitration before the American Arbitration Association, in the office of the Association nearest the principal place of business of AGENT ...

P & P admitted that its contract claims were arbitrable but argued that the tortious interference claims were not. The Oklahoma

---

[1]The record does not indicate what happened to Sutter's suit in California, but P & P in its initial brief states that the federal district court in California declined to compel arbitration citing a lack of jurisdiction.

[2]FAA § 3 provides that: "[i]f any suit ... be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit ... is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ..." 9 U.S.C. § 3.

district court disagreed, stayed P & P's action and submitted the entire matter to arbitration. The Oklahoma district court's order staying P & P's action pending arbitration was interlocutory and was not immediately appealable under the FAA. 9 U.S.C. § 16. Left with no other choice, P & P agreed to arbitration under a reservation of the right to appeal the Oklahoma district court's determination of the arbitrable issues. Further, P & P refused to concede that the arbitration would be binding.[3]

Nevertheless, P & P did participate fully in the arbitration in defense of the claims against it and in prosecution of its own counter-claims against Sutter. The arbitration was held in Dallas, Texas, and the arbitrator found against P & P on Sutter's claims against it and on its counter-claims against Sutter.[4] On April 4, 1996, Sutter informed the Oklahoma district court that the arbitration was complete. On that same day, P & P filed a motion to vacate the arbitration award, under FAA § 10 which states that:

> the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ... [w]here the arbitrators exceeded their powers ...

9 U.S.C. § 10. The alleged excess of the arbitrator was in ruling on matters which were not arbitrable under the parties' agreement,

---

[3]Specifically, P & P refused to accept the application of American Arbitration Association Rule 47(c) which provides that "[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."

[4]The principal place of business of the AGENT, P & P, is Oklahoma, but the nearest AAA office is Dallas, Texas, therefore the arbitration was properly held in Dallas.

i.e., P & P's tortious interference claims. Essentially, this motion revived P & P's earlier motion before the Oklahoma district court to limit the scope of the arbitration. Sutter responded on the merits but also raised the possibility that the Oklahoma court might not be the proper court to decide the motion to vacate under § 10, because the Oklahoma district court was not the "United States court in and for the district wherein the award was made". 9 U.S.C. § 10.

On August 11, 1996, Sutter filed an action in the Federal District Court for the Northern District of Texas, Dallas Division, seeking confirmation of the arbitration award pursuant to FAA § 9, which states that, "[i]f no court is specified in the agreement of the parties, then such *application [for confirmation] may be made to the United States court in and for the district within which such award was made.*" 9 U.S.C. § 9 (emphasis added). On May 6, 1996, P & P filed a motion in the Texas district court to dismiss the Texas action, transfer the action to Oklahoma or stay the Texas confirmation proceeding pending resolution by the Oklahoma district court of P & P's motion to vacate the arbitration award, based on the "first to file rule". Finally, on July 17, 1996, P & P filed an alternative motion under § 10 in the Texas district court to vacate the arbitration award, raising the same issues as its motion to vacate previously filed in Oklahoma.

On August 14, 1996, the Texas district court denied P & P's motion to dismiss, transfer or stay the confirmation proceeding, finding that under the language of § 9 and the cases in this

4

Circuit construing that provision, the Northern District of Texas was the only court which could decide Sutter's motion to confirm. The Texas district court also denied P & P's motion to vacate the arbitration award, holding that P & P's non-arbitrability argument had already been addressed by the Oklahoma district court, and therefore, there was no need to revisit the issue. Finally, relying on this Court's decision in *McKee v. Home Buyers Warranty Corp. II,* 45 F.3d 981, 983 (5th Cir.1995), the Texas district court held that an agreement to submit to AAA arbitration implies concensus that the award will be deemed binding and subject to entry of judgment, unless the parties expressly agree otherwise. Therefore, the arbitration in this case was deemed binding.

P & P appeals raising the following issues:

1. Whether the Texas district court should have dismissed, transferred or stayed Sutter's confirmation action, pending resolution by the Oklahoma district court of the P & P motion to vacate the arbitration award, under the "first to file rule";

2. Whether the Texas district court should have refused to confirm the arbitration award, because the arbitration agreement did not provide for finality of any such award;

3. Whether the Texas district court, in the alternative, should have vacated the arbitration award under FAA § 10, because the tortious interference claims were not arbitrable.

II.

P & P's Motion to Dismiss, Transfer or Stay

A.

*Standard of Review*

A district court's decision whether to grant a stay is ordinarily reviewed for abuse of discretion.*Save Power Limited v.*

*Syntek Finance Corp.,* 121 F.3d 947, 948 (5th Cir.1997). However, to the extent the district court's decision in this case rests on an interpretation of the law, the decision is reviewed *de novo.* *Goldman v. Bosco,* 120 F.3d 53, 54 (5th Cir.1997).

B.

*Law*

The so-called "first to file rule" is a by-product of the well-established axiom that:

> [t]he federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs. [citations omitted] ... The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. [citations omitted] ... To avoid these ills, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court.

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728-29 (5th Cir.1985). Therefore, typically if the Oklahoma and Texas cases "overlap on the substantive issues, the cases [should] be ... consolidated in ... the jurisdiction first seized of the issues." *Mann Mfg. Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 n. 6 (5th Cir.1971).

However, concerns about comity notwithstanding, whether both the Oklahoma and Texas district courts could decide Sutter's motion to confirm, or just the Texas district court, is controlled by statute. 9 U.S.C. § 9. Hence, the "first to file rule" must yield, if § 9 establishes that the Texas district court is exclusively the appropriate court to decide Sutter's motion to confirm, even though

6

the same issues were first raised in the Oklahoma district court.

The question of which district court is the appropriate court to decide post-arbitration motions under §§ 9, 10 and 11, is one of permissive or mandatory venue. These statutory provisions are akin to venue provisions in the sense that they identify which of the several district courts having jurisdiction is the appropriate one to decide these post-arbitration motions. If these so-called venue provisions are mandatory (appropriately brought only in "the United States court in and for the district within which such award was made"), then they may be seen as jurisdictional, in that they would deprive all other district courts of the power to decide these motions.[5] However, since we view these provisions as permissive, they are more closely akin to venue provisions, because they do not take the power to decide these post-arbitration motions away from any federal district court otherwise having jurisdiction.

i.

*§ 9 Venue*

We are convinced that the district court's conclusion that venue is mandatory under § 9 is based on a misunderstanding of the law in this Circuit.

a.

---

[5]In the Ninth Circuit, where these provisions are viewed as mandatory, the Court has found that an Arizona district court properly refused to vacate a California arbitration award under § 10 citing a lack of subject matter jurisdiction. *United States v. Ets-Hokin Corp.,* 397 F.2d 935, 938-39 (9th Cir.1968). *See also, Feliciano v. Wirth,* 911 F.2d 737 (9th Cir.1990)(vacatur of California arbitration award under § 10 by Nevada district court invalid for lack of subject matter jurisdiction).

7

*Purdy*

In *Purdy v. Monex Intern. Ltd.,* 867 F.2d 1521, 1523 (5th Cir.1989), this Court held that § 9 "does not establish an exclusive forum for suits upon arbitral awards." In *Purdy* the defendant removed a Texas state court action to federal court in Texas and made a motion under § 3 for a stay pending arbitration in California in accordance with the forum selection clause in their contract, and a motion to compel arbitration under § 4. The Texas district court granted the stay, ordered the parties to arbitrate in California, and plaintiff immediately appealed. Plaintiff argued that since venue under § 9 was mandatory in the California district court, the Texas district court could not entertain a post-arbitration application to confirm the award, and therefore, its order to arbitrate in California was tantamount to a final order.

This Court noted that § 9 "says only that a party *may* apply to the federal court in the district where the award was entered to seek its enforcement." *Purdy,* 867 F.2d at 1523 (emphasis in original). Therefore, we concluded that "[t]his language does not prevent the court in the Southern District of Texas, which stayed the appellant's action pending California arbitration, from re-opening that action after arbitration is concluded." *Id.* Since venue under § 9 was permissive, the Texas district court could retain venue and its stay was an interlocutory rather than final order favoring arbitration, which was not immediately appealable. 9 U.S.C. § 16.

8

In the instant case, the Texas district court's holding that § 9 venue was mandatory in that court is clearly inconsistent with the holding in *Purdy.* Such holding prevented the Oklahoma district court from doing the very thing that the Court in *Purdy* seemed to anticipate, i.e., staying P & P's action pending arbitration and "re-opening that action after arbitration is concluded." The district court relied in part on our pre-*Purdy* decision in *City of Naples v. Prepakt Concrete Company,* 490 F.2d 182 (5th Cir.1974), and the outcome in this case must necessarily turn on the precedential value of that case. *See, Oncale v. Sundowner Offshore Services, Inc.,* 83 F.3d 118, 120 (5th Cir.1996)(discussing the doctrine of *stare decisis* and how to identify *obiter dictum* ).

b.

*Prepakt Concrete*

In *Prepakt Concrete* the City of Naples, Florida, sued Prepakt, an Ohio corporation, in Florida state court, Prepakt removed to federal district court in Florida and moved for a stay pending arbitration under § 3 and to compel arbitration under § 4. The Florida district court granted the stay and ordered arbitration in accordance with the agreement, which provided, by incorporation of the AAA rules, that the AAA would fix the arbitration locale in case of a dispute. A dispute arose, and the AAA decided that the arbitration should be held in Ohio. The Ohio arbitrators awarded Prepakt $90,000.00.

Prepakt filed a motion in the Northern District of Ohio under § 9 to confirm the award, as it was "the United States court in and

9

for the district within which such award was made." 9 U.S.C. § 9. Back in Florida the City asked the district court to enjoin the Ohio proceedings arguing that § 4 of the FAA required the arbitration to be held in Florida, which would make the Florida district court the proper court to determine post-arbitration motions.[6] In response, Prepakt argued that the City had waived its right to oppose arbitration in Ohio by waiting too long to bring § 4 to the attention of the Florida district court, and that venue under § 9 was mandatory, making the Ohio district court the exclusively appropriate court to determine its motion to confirm. The Florida district court agreed with the City and issued an injunction against any further proceedings in the matter in any other court.

On appeal this Court held that the City had waived its right to oppose Ohio arbitration under § 4 by "agreeing in an arm's length commercial contract to abide by the AAA's decision as to arbitration locale in cases of dispute ..." *Prepakt Concrete,* 490 F.2d at 185. This Court then stated that:

> "[t]he City may be technically correct in urging that the federal court in Florida retained jurisdiction over the stayed lawsuit. Nevertheless, *in view of § 9's command,* and for reasons of judicial restraint and comity, the District Judge should have declined to enjoin the confirmation proceeding in the Ohio District Court."

*Prepakt Concrete,* 490 F.2d at 184 (emphasis added), *citing Reed & Martin, Inc. v. Westinghouse Elec. Corp.,* 439 F.2d 1268, 1272-73

---

[6]§ 4 states that "[t]he hearings and proceedings ... shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

10

(2nd Cir.1971). The Court in *Prepakt* did not explain what it meant by " § 9's command" or why that command compelled or even supported the result reached.

The conclusion that the Florida district court retained jurisdiction after the stay, but that the Ohio district court had exclusive jurisdiction to decide all post-arbitration motions is inconsistent. We have to ask, over what did the Florida district court retain jurisdiction? The answer is nothing. If § 9 is mandatory, then whenever a district court stays its proceedings in favor of arbitration in another district, the stay is the equivalent of a dismissal, because the district court thereby deprives itself of venue over any further action in the matter. This Court specifically recognized this absurd result created by treating § 9 as mandatory. *Purdy,* 867 F.2d at 1523, *citing NII Metals Services, Inc. v. ICM Steel Corp.,* 514 F.Supp. 164 (N.D.Ill.1981). *See also, In re VMS Securities Litigation,* 21 F.3d 139, 145 (7th Cir.1994)(noting this and several other problems caused by mandatory venue under § 9, 10 and 11). Since *Prepakt Concrete* does not directly answer the question whether venue under § 9 is mandatory, we will not assume that it does, especially when doing so would lead to a litany of absurd results. *Purdy* on the other hand directly poses and answers the question of venue under § 9 in a context where its resolution is necessary to the Court's ultimate conclusion. Therefore, we find that *Purdy* correctly states the law in this Circuit. Venue under § 9 is not mandatory and does not prevent the Texas district court in the instant case

11

from staying, dismissing or transferring Sutter's motion to confirm, pending resolution of P & P's motion to vacate by the Oklahoma district court.

## ii.

### § 10 Venue

However, if venue under § 10 is mandatory, then the Texas district court would be the exclusive forum to decide P & P's motion to vacate the arbitration award, which would make a dismissal, transfer or stay impossible. Those circuits which have dealt with the question, uniformly agree that §§ 9 and 10 must be construed the same, regardless of whether they are found to be permissive or mandatory. *In re VMS Securities Litigation,* 21 F.3d at 142, *citing Sunshine Beauty Supplies, Inc. v. Unites States District Court for Central Dist. of Cal.,* 872 F.2d 310, 312 n. 4 (9th Cir.1989), *and Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986). In any event, a mandatory reading of § 10 would create the same absurd result decried in *Purdy.* We agree with the Seventh Circuit's reasoning in *In re VMS Securities Litigation,* 21 F.3d at 142-45, and hold that venue under § 10 is also permissive. Thus, § 10 did not prevent the Texas district court from dismissing, staying or transferring P & P's motion to vacate under the "first to file rule".

## C.

### Analysis

Having concluded that the venue provisions of §§ 9 and 10 are

12

permissive, it does not necessarily follow that the Texas district court had to grant P & P's motion to dismiss, transfer or stay the Texas proceedings.  However, "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Limited,* 121 F.3d 947, 948, *citing West Gulf Maritime Association v. ILA Deep Sea Local 24,* 751 F.2d 721, 728 (5th Cir.1985); *Mann Mfg.,* 439 F.2d at 408 (5th Cir.1971).  Therefore, the "first to file rule" not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.  This Court stated in *Mann Mfg.,* 439 F.2d at 408, that:

> once the likelihood of substantial overlap [of issues] between the two suits had been demonstrated, it was no longer up to the court in Texas to resolve the question of whether both should proceed.  By virtue of its prior jurisdiction over the common subject matter ... the determination of whether there actually was substantial overlap requiring consolidation of the two suits in [Oklahoma] belonged to the United States District Court in [Oklahoma].

There is no doubt that substantial overlap exists between the Texas and Oklahoma actions in the instant case.  P & P's motion to vacate in Oklahoma, Sutter's motion to confirm in Texas and P & P's motion to vacate in Texas all present identical issues.  Under these circumstances, the Texas district court abused its discretion.  Therefore, we reverse and remand this matter to the United States District Court for the Northern District of Texas, so that it may transfer the matter to the United States District Court

13

for the Western District of Oklahoma for resolution of whether the Texas action should be allowed to proceed independently or should be consolidated in Oklahoma.[7]

REVERSE AND REMAND.

---

[7]We do not reach the question of whether the arbitration in this case was binding, or whether the Texas district court should have vacated the arbitration award under § 10. The determination of these questions will depend on the Oklahoma district court's conclusion as to which court should decide them.