**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

P & P INDUSTRIES, INC., an
Oklahoma corporation,

      Plaintiff - Appellant,

      v.

SUTTER CORPORATION, a
California corporation,

      Defendant - Appellee.

No. 98-6358

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-95-1273-T)**

---

Gary L. Levine (Stephen G. Solomon with him on the briefs), Derryberry,
Quigley, Solomon & Naifeh, Oklahoma City, Oklahoma, for Appellant.

Edward J. McIntyre, Solomon, Ward, Seidenwurm & Smith, LLP, San Diego,
California, for Appellee.

---

Before **ANDERSON** , **BARRETT** , and **HENRY** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Appellant P & P Industries, Inc. (P & P) appeals from an order and judgment of the district court confirming an arbitration award in favor of Appellee Sutter Corporation (Sutter).  This case presents three issues, two of which concern the district court's power to confirm the award, and one of which concerns the merits of the district court's confirmation of the award.  First, we must determine whether  any federal district court could have jurisdiction to confirm the arbitration award in this case.  Section 9 of the Federal Arbitration Act (FAA), 9 U.S.C. § 9, authorizes confirmation only where the parties have agreed that a "judgment of the court" would be entered upon any arbitration award.  Second, if we decide that the parties agreed to judicial confirmation of their arbitration award, we must then determine whether the United States District Court for the Western District of Oklahoma was a proper forum for confirmation of the arbitration award in this case.  Finally, if we decide that the district court had jurisdiction and was the proper forum, we must decide whether the district court properly confirmed the award.  For the reasons discussed below, we hold as follows:  (1) the parties agreed to judicial confirmation of their arbitration award; (2) the Western District of Oklahoma was a proper forum for confirmation; and (3) the district court properly confirmed the award.

## BACKGROUND

Sutter is a California corporation specializing in the manufacture of post-operative rehabilitation devices. Prior to March 1993, Paul Patredis was Sutter's sole sales representative in Oklahoma and Arkansas. In early 1993, Patredis and James Patton formed P & P Industries, Inc., which, on March 1, 1993, signed an exclusive Agency Agreement ("the Agreement") with Sutter. The Agreement granted P & P the right to exclusively represent Sutter products in parts of Oklahoma and Arkansas (and, after December 1994, in parts of Texas) for a five-year period, with an option to renew the Agreement for two additional five-year periods. Soon after signing the Agreement, P & P hired several staff members.

The Agreement contained an arbitration clause which stated that "[a]ny controversy, claim, or breach arising out of or relating to this Agreement which the parties are unable to resolve to their mutual satisfaction shall be resolved by arbitration before the American Arbitration Association, in the office of the Association nearest the principal place of business of [P & P]." I App. at 18.

Sometime during the summer of 1995, Sutter became aware that P & P was allegedly "engaged in a kickback scheme with a physician, engaged in embezzlement, [and had] diverted Sutter payments to employees and [had] misappropriated Sutter revenue." Appellee's Br. at 5. On August 10, 1995, Sutter filed an arbitration demand with the American Arbitration Association

(AAA) in Dallas, Texas, the AAA office nearest to P & P's principal place of business in Oklahoma. Sutter also unilaterally terminated the Agreement, effective August 14. Between August 11 and August 14, Sutter allegedly contacted all of P & P's employees and urged them to resign from P & P and to sign on with Sutter, and most of them did so.

P & P was notified of Sutter's actions on August 14. Three days later, P & P filed a complaint in federal district court in the Western District of Oklahoma, seeking compensation for Sutter's unilateral breach of the Agreement, as well as for various alleged tortious actions, such as tortious interference with P & P's contract rights. P & P also sought a declaratory judgment interpreting the arbitration clause of the Agreement. Soon after P & P's complaint was filed, Sutter moved the court to stay the proceedings pending arbitration. In response, P & P conceded that the breach of contract claims in its complaint were arbitrable. However, P & P argued that the balance of its claims were not arbitrable under the Agreement, and that in any case any arbitration award made pursuant to the Agreement's arbitration clause was not subject to confirmation by a federal district court.

On October 5, 1995, before the federal district court had ruled on Sutter's motion to stay, P & P notified the AAA that "[t]o avoid a default" it intended to participate in the arbitration, but that it "[did] not intend to waive any of [its]

judicial rights by participation," and it "specifically object[ed] to 'AAA' Rule 47(c)." [1]  I App. at 211.  The next day, it filed a counterclaim with the AAA in Dallas, which, after amendment, sought $16 million in damages.

On November 6, 1995, the district court granted Sutter's motion to stay proceedings, ruling that all of P & P's claims were arbitrable under the Agreement.  The district court did not discuss whether any eventual arbitration award would be subject to confirmation by a federal district court.  On November 8, 1995, P & P forwarded a copy of the district court's order to the AAA, and enclosed a cover letter in which it again professed to reserve its judicial rights, and again objected to the application of AAA Rule 47(c).

The dispute, in its entirety, was arbitrated in Dallas in January 1996.  On March 22, 1996, the arbitrator issued an award, finding in favor of Sutter and ordering P & P to pay Sutter $112,562 in damages.  Furthermore, the arbitrator specifically found that Sutter had the right to terminate the Agreement as it did, and that P & P's tort-based claims were without merit.

On April 4, 1996, Sutter notified the Oklahoma district court that the arbitration had been completed.  On that same day, P & P filed a motion asking

---

[1]AAA Rule 47(c) states that "[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."  See Sutter Corp. v. P & P Indus., Inc., 125 F.3d 914, 916 n.3 (5th Cir. 1997); Appellant's Br. at 23.

the Oklahoma district court to vacate the award on the ground that the arbitrator had exceeded his authority.

About a week later, Sutter filed a motion for confirmation of the award in federal district court in the Northern District of Texas. Sutter filed this motion in Texas because 9 U.S.C. §§ 9-10 can arguably be interpreted to require that arbitration awards be confirmed and/or vacated _only_ in the district where the award was handed down.

In late April, Sutter responded to P & P's motion to vacate the arbitration award, filed in the Oklahoma district court, on its merits, but also pointed out to the Oklahoma district court that there was some doubt about whether it had the power to vacate the award. Sutter also moved for confirmation of the award, as it had in the Texas federal court.

In May, P & P appeared in federal court in Texas, and asked that court to dismiss the case and transfer it back to Oklahoma, or, in the alternative, to stay proceedings until the Oklahoma federal court had ruled on P & P's Oklahoma motion to vacate the award. In July, P & P filed a motion to vacate the arbitration award, as it had in the Oklahoma federal court. Thus, both the Texas and Oklahoma federal courts had virtually identical motions before them—one from P & P to vacate the award, and one from Sutter to confirm it.

The Texas court ruled first on the motions.  On August 14, 1996, it denied

P & P's motions to dismiss, transfer, or stay the Texas proceedings, as well as

P & P's motion to vacate the award, and granted Sutter's motion to confirm the

award.  The Texas district court ruled that 9 U.S.C. §§ 9-10 mandated that the

court in the district where the award was handed down was the only federal

district court that could confirm or vacate an arbitration award.  When the

Oklahoma district court heard of the Texas court's disposal of the issues, it stayed

its proceedings on the similar motions until the Texas court's rulings could be

appealed to the United States Court of Appeals for the Fifth Circuit.

On October 27, 1997, the Fifth Circuit ruled that the Texas district court

had misinterpreted the FAA, and that the court in the district in which an

arbitration award was handed down was not the only federal district court that

could confirm or vacate that award.    Sutter Corp. v. P & P Indus., Inc.   , 125 F.3d

914, 919 (5th Cir. 1997).  Applying the "first to file rule," it remanded the case

back to the Texas district court with instructions to transfer the case to the

Oklahoma district court for a decision as to whether the Texas proceedings should

be consolidated with the Oklahoma proceedings.    Id. at 920.

The very next day, P & P filed a motion in the Oklahoma district court,

requesting that it act on the motions it had stayed pending the Fifth Circuit

appeal.  A few months later, on August 6, 1998, the Oklahoma district court

issued an order granting Sutter's motion to confirm the award. The district court also denied P & P's motion to vacate the award, reaffirming its earlier decision that all of P & P's claims, not just the breach of contract claims, were arbitrable, and ruling that the arbitrator had therefore not exceeded his authority by ruling on the tort-based claims. The district court held that it had jurisdiction to confirm the award, because the parties' arbitration clause contemplated judicial confirmation of awards, and because the FAA allowed any federal district court, not just the one in the district where the award was rendered, to confirm an arbitration award. On September 2, 1998, the district court entered judgment in favor of Sutter.

P & P now appeals from this order and judgment of the district court.

**DISCUSSION**

At the outset, we note the "liberal federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). In keeping with this liberal policy toward arbitration, courts are instructed to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." Id. at 24-25. In addition, this liberal policy "covers more than simply the substantive scope of the arbitration clause," and "encompasses an expectation that [arbitration] procedures will be binding." McKee v. Home Buyers Warranty

-8-

Corp. II, 45 F.3d 981, 985 (5th Cir. 1995); see also Rainwater v. National Home Ins. Co., 944 F.2d 190, 192 (4th Cir. 1991) (stating that "it is presumed that . . . arbitration was intended to be the exclusive means of resolving disputes arising under the contract" (citation omitted)).

### I.      Jurisdictional Issues

Our first task is to determine whether the district court had jurisdiction to confirm the arbitration award. In arbitration confirmation cases, such as this one, the jurisdictional inquiry is twofold. First, because the FAA "does not create any independent federal-question jurisdiction," "there must be diversity of citizenship or some other independent basis for federal jurisdiction" before a federal court can act under the FAA. Moses H. Cone, 460 U.S. at 25 n.32; see also Oklahoma City Assocs. v. Wal-Mart Stores, Inc., 923 F.2d 791, 793 (10th Cir. 1991). Second, § 9 of the FAA, which authorizes confirmation of arbitration awards under certain circumstances, "creates its own level of subject matter jurisdiction for confirmation under the FAA." Oklahoma City Assocs., 923 F.2d at 793.

In this case, the parties agree that the district court had jurisdiction over this case, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000. We are satisfied that the district court had diversity jurisdiction over this case. See State Farm

Mut. Auto. Ins. Co. v. Narvaez, 149 F.3d 1269, 1270-71 (10th Cir. 1998).  The second part of our jurisdictional inquiry, however, is more complex.  We must determine whether any federal district court was authorized by the FAA to confirm the arbitration award in this case, and, if so, whether the United States District Court for the Western District of Oklahoma was a proper forum for confirmation, or whether the only proper forum for confirmation here, because the award was handed down in Dallas, was the United States District Court for the Northern District of Texas.

### A.  Did the Parties Contemplate Judicial Confirmation of Arbitration Awards?

Section 9 of the FAA provides, in relevant part, as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, . . . then at any time within one year after the award is made any party to the arbitration may apply to [a] court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added).  P & P argues that the parties did not agree, "in their agreement," that "a judgment of the court shall be entered upon" arbitration awards made pursuant to their arbitration clause.  We have previously held that a district court has no power to confirm an arbitration award under § 9 of the FAA unless the parties have agreed, explicitly or implicitly, that any eventual

-10-

arbitration award shall be subject to judicial confirmation.    See Oklahoma City Assocs. , 923 F.2d at 794-95.

In addition to explicit language evidencing a consent to judgment, courts have recognized two other methods by which parties can manifest consent to judicial confirmation of arbitration awards.  If the parties to an arbitration clause agree that their arbitration shall be final and binding, some courts have held that the parties have consented to judicial confirmation of awards, because judicial involvement is the only way to make arbitration awards final and binding.    See Booth v. Hume Pub. Co.   , 902 F.2d 925, 930 (11th Cir. 1990);    Place St. Charles v. J. A. Jones Constr. Co.   , 823 F.2d 120, 124 (5th Cir. 1987);    Milwaukee Typographical Union No. 23 v. Newspapers, Inc.     , 639 F.2d 386, 389-90 (7th Cir. 1981); I/S Stavborg v. National Metal Converters, Inc.     , 500 F.2d 424, 426-27 (2d Cir. 1974).  This "finality exception" has been criticized, however, because "without more, it is equally plausible that a finality clause could be interpreted to mean [that] the parties intended to have the award enforced in      state  rather than federal court."   Oklahoma City Assocs.   , 923 F.2d at 794;   accord  PVI, Inc. v. Ratiopharm GmbH  , 135 F.3d 1252, 1254 (8th Cir. 1998).

Similarly, courts have also held that parties who agree that their arbitration shall be governed by the rules of the AAA have implicitly consented to judicial confirmation, because AAA Rule 47(c)     states that "[p]arties to these rules shall be

-11-

deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." See McKee, 45 F.3d at 983-84 & n.3; Rainwater, 944 F.2d at 192-94; Commonwealth Edison Co. v. Gulf Oil Corp., 541 F.2d 1263, 1272-73 (7th Cir. 1976).

In the case before us, it is undisputed that the parties did not explicitly consent, in the Agreement, to have federal court judgment entered upon their arbitration award. Furthermore, the Agreement contains no clause stating that arbitration shall be final and binding. Sutter argues, however, that the parties' arbitration clause, which mandates that any disputes shall be arbitrated "before the American Arbitration Association," I App. at 18, indicates an agreement that the parties be bound by the procedural rules of the AAA. We agree.

Courts interpreting similar contractual clauses, in which the parties agree to arbitrate before the AAA but do not specify which procedural rules are to apply to the arbitration, have held that "[s]ince the drafter of the arbitration provision contemplated arbitration by the AAA of all disputes arising out of the contract, the relevant commercial arbitration rules promulgated by the AAA were incorporated into the arbitration agreement." Schulze and Burch Biscuit Co. v. Tree Top, Inc., 642 F. Supp. 1155, 1157 (N.D. Ill. 1986), aff'd, 831 F.2d 709 (7th Cir. 1987); see also Mulcahy v. Whitehill, 48 F. Supp. 917, 919 (D. Mass. 1943) (stating that "the defendant's unqualified submission of disputes" to arbitration

before the AAA "necessarily implied a submission to the Rules of Procedure of the [AAA]" and that "[i]t follows . . . that the defendant, by consent, is bound . . . by the [AAA's] Rules of Procedure"). Indeed, Rule 1 of the AAA, to which P & P did not object, states that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association." See Appellee's Br. at 21.

We find the logic of this Rule, and of the courts interpreting similar contractual provisions, to be persuasive, especially in light of the liberal federal policy favoring binding arbitration. See McKee, 45 F.3d at 985. A party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the AAA, unless that party indicates otherwise in the contract. By agreeing to arbitrate before the AAA, and by not specifying an alternative set of arbitration rules in the agreement, P & P and Sutter impliedly agreed that they would be bound, in the course of arbitration proceedings, by the procedural rules of the AAA, including Rule 47(c). [2] Thus, P & P and Sutter impliedly agreed "that judgment upon the arbitration award may be entered in any

---

[2] P & P's post-dispute objections to Rule 47(c) are irrelevant. At the time it signed the Agreement, P & P agreed to arbitrate before the AAA. Absent some objection in the Agreement, P & P's contractual promise to arbitrate before the AAA included implied consent to the AAA's procedural rules. P & P cannot unilaterally free itself from its contractual obligation by making post-dispute objections to a specific AAA Rule.

federal or state court having jurisdiction thereof." Therefore, the jurisdictional prerequisite of § 9 was satisfied here.

### B. Did the Oklahoma District Court Have Power to Confirm or Vacate the Award?

Having determined that the parties, in the Agreement, contemplated judicial confirmation of arbitration awards, and that therefore § 9 authorizes a federal district court to confirm the arbitration award, we must next determine whether the specific district court in this case—the United States District Court for the Western District of Oklahoma—was authorized by § 9 to confirm the award. [3] Section 9 states, again in relevant part, that if the parties have agreed to judicial confirmation,

> and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or

---

[3]P & P argues that this issue is not before this court, because it did not raise the issue in its appeal, and because Sutter has not filed any cross-appeal challenging the judgment of the district court. See Appellant's Reply Br. at 12. Although Sutter did not file a cross-appeal, it did raise this issue in its brief, and, in any event, "a federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings." State Farm Mut. Auto. Ins. Co. v. Narvaez, 149 F.3d 1269, 1270-71 (10th Cir. 1998). If the "venue" provisions of 9 U.S.C. §§ 9-10 are mandatory, and authorize only the federal district court in the district in which the award was made to confirm or vacate arbitration awards, then the district court in this case had no power to confirm the award.

-14-

corrected as prescribed in sections 10 and 11 of this title. <u>If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made</u>.

9 U.S.C. § 9 (emphasis added).

Federal appellate courts have reached different conclusions with regard to the interpretation of this statute. Some circuits hold that § 9 (or § 10)[4] authorizes <u>only</u> the district court in the district where the award was made to confirm (or vacate) arbitration awards. <u>See</u> <u>Bill Harbert Constr. Co. v. Cortez Byrd Chips, Inc.</u>, 169 F.3d 693, 694-95 (11th Cir. 1999); <u>Sunshine Beauty Supplies, Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.</u>, 872 F.2d 310, 311-12 (9th Cir. 1989); <u>Island Creek Coal Sales Co. v. City of Gainesville, Fla.</u>, 729 F.2d 1046, 1049-50 (6th Cir. 1984). Other circuit courts, including the Fifth Circuit in the Texas appeal in this case, have reached the opposite conclusion, and have held

---

[4]Every federal circuit court to address the issue, whether or not it holds that the FAA authorizes more than one federal court to confirm or vacate arbitration awards, has held that § 9 and § 10 should be interpreted uniformly in this regard. Section 10 employs slightly different wording than § 9, and could conceivably be interpreted differently from § 9. Section 10 states that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." However, because "the proceeding in which a party would seek to have its award confirmed under § 9 is the same proceeding in which that party's opponent would seek to have the award vacated" under § 10, <u>Hubbard v. Prudential Sec. Inc. (In re VMS Sec. Litig.)</u>, 21 F.3d 139, 142 (7th Cir. 1994), courts have treated § 9 and § 10 identically for "venue" purposes, and have held that a particular district court either has power to both vacate or confirm an award, or has power to do neither.

-15-

that any federal district court otherwise having jurisdiction over the action is authorized to confirm or vacate an arbitration award. See Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 190-92 (4th Cir.), cert. denied, 119 S. Ct. 178 (1998); Sutter, 125 F.3d at 918-20; Hubbard v. Prudential Sec. Inc. (In re VMS Sec. Litig.), 21 F.3d 139, 142-45 (7th Cir. 1994); Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 706-07 (2d Cir. 1985). [5]

The reasoning of the majority of the circuits, which hold that authority under the FAA to confirm or vacate arbitration awards is not limited to the district court in the district where the award was made, is persuasive. As several of those cases point out, the opposite conclusion leads to "absurd results." In re VMI Sec. Litig., 21 F.3d at 144; see also Sutter, 125 F.3d at 919. For instance, if § 9 gave only the district court in the district where the arbitration award was made power to confirm the award, § 3 of the FAA would be rendered meaningless. See In re VMI Sec. Litig., 21 F.3d at 144. Section 3 instructs "any

_____

[5]We have never reached this precise issue. Oklahoma City Assocs. dealt only with whether the parties consented to judicial confirmation of their arbitration award, and, accordingly, whether any federal district court had jurisdiction under § 9 to confirm the award. 923 F.2d at 793-95. At least one district court within this circuit, however, has reached the "venue" issue, and sided with the majority of the circuits, holding that authority under the FAA to confirm or vacate arbitration awards is not limited to the district court in the district where the award was made. Denver & Rio Grande West. R.R. Co. v. Union Pacific R.R. Co., 868 F. Supp. 1244, 1247-50 (D. Kan. 1994), aff'd, 119 F.3d 847 (10th Cir. 1997).

-16-

of the courts of the United States" to "stay the trial of the action" pending arbitration if that court is "satisfied     that the issue involved in such suit or proceeding is referable to arbitration" under the parties' agreement.  9 U.S.C. § 3. However, if that court had no power to confirm (or vacate) the award under § 9 (or § 10), it should dismiss the action rather than stay proceedings, because that court has no power to take any further action in the case.        See Sutter, 125 F.3d at 919; In re VMI Sec. Litig.   , 21 F.3d at 144.  In addition to eviscerating a provision of Title 9, the minority interpretation would also lead to wasteful allocation of judicial resources, because district courts which otherwise have jurisdiction over arbitration cases would often be required to dismiss them, which would compel litigants to "sue in another forum to enforce [the] award under § 9."        In re VMI Sec. Litig. , 21 F.3d at 145;   see also  Smiga, 766 F.2d at 706.

Furthermore, "ordinary canons of statutory construction suggest that Congress would have used stronger language than 'such application        may be made' or 'may apply' if the intention was to restrict the power of a federal court in Arbitration Act cases."    Smiga, 766 F.2d at 706 (citation omitted) (emphasis added).  Indeed, as the Seventh Circuit has indicated, when Congress intends for one specific district court to be the exclusive forum for a certain matter, it uses unambiguous language to express its intention.       See In re VMI Sec. Litig.   , 21 F.3d at 144 & n.3 (referencing the Miller Act, 40 U.S.C. § 270b(b), which states

-17-

that "[e]very suit instituted under this section shall be brought . . . in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere," and the Clean Air Act, 42 U.S.C. § 7604(c)(1), which states that "[a]ny action . . . may be brought only in the judicial district in which such sources are located");  see also  Apex Plumbing Supply, Inc.  , 142 F.3d at 192.

On the other hand, none of the minority opinions contain any detailed analysis of the issue; each of the minority opinions rests its conclusion solely on citations to ostensibly applicable precedent.  For instance, the Eleventh Circuit stated simply that it was bound by a pre-split Fifth Circuit case—  Naples v. Prepakt Concrete Co.  , 490 F.2d 182, 184 (5th Cir. 1974)—which the modern Fifth Circuit, in  Sutter , found inapplicable.  See  Bill Harbert Constr. Co.  , 169 F.3d at 694-95;  Sutter , 125 F.3d at 918-19.  The Ninth Circuit in  Sunshine Beauty Supplies, Inc.  and  Central Valley Typographical Union, No. 46 v. McClatchy Newspapers , 762 F.2d 741, 744 (9th Cir. 1985), considered itself bound by circuit precedent, but that circuit precedent—  United States ex rel. Chicago Bridge & Iron Co. v. ETS-Hokin Corp.  , 397 F.2d 935 (9th Cir. 1968)—contains no analysis of the issue, and merely states its conclusion.  See  ETS-Hokin Corp.  , 397 F.2d at 938-39.  Finally, the Sixth Circuit relies solely on  Prepakt Concrete Co.  ,  ETS-Hokin Corp.  , and  Commonwealth Edison Co. v. Gulf Oil Co.  , 541 F.2d 1263,

-18-

1272 n.16 (7th Cir. 1976), a case the Seventh Circuit ignored as "dicta" on this point in In re VMS Sec. Litig., 21 F.3d at 143. In short, we do not consider the reasoning of the minority cases to be compelling.

Accordingly, we join the majority of our sister circuits, and hold that authority under the FAA to confirm or vacate arbitration awards is not limited to the district court in the district where the award was made.[6] Therefore, the United States District Court for the Western District of Oklahoma was authorized by § 9 to confirm the arbitration award, even though the award was handed down in Dallas, Texas.

## II. Substantive Issues

Having determined that the district court in this case had jurisdiction to hear the case, and was authorized by the FAA to confirm the award, we next consider whether the district court properly granted Sutter's motion to confirm the arbitration award, and denied P & P's motion to vacate it.

---

[6]Of course, merely because a court has the power to confirm an award does not always mean that it should do so. Often, as noted in Sutter, concerns such as the "first to file rule" will play a role in deciding which court, of the many that have power to confirm the award, should in fact do so. See Sutter, 125 F.3d at 920. Other reasons for transfer, including transfer pursuant to 28 U.S.C. § 1404 or common law doctrines such as forum non conveniens, may also apply.

Section 9 states that a federal district court having jurisdiction over the matter "must grant" a motion to confirm an arbitration award, "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. We have stated that "[a] court may only vacate an arbitration award for reasons enumerated in . . . § 10, or for a handful of judicially created public policy reasons." Denver & Rio Grande West. R.R. Co. v. Union Pac. R.R. Co., 119 F.3d 847, 849 (10th Cir. 1997). Section 10 allows vacation of an arbitration award only where (1) the award was procured by corruption, fraud or undue means; (2) there was evident partiality or corruption on the part of the arbitrators; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded or imperfectly executed their powers. See 9 U.S.C. § 10(a). In addition to these statutory grounds for vacation, courts have on occasion vacated arbitration awards which violate public policy, were based on a manifest disregard of the law, or were arrived at without a fundamentally fair hearing. See Denver & Rio Grande , 119 F.3d at 849 (citing cases).

P & P argues that the fourth statutory ground for vacation applies to this case, asserting that the arbitrator exceeded his powers by ruling on its tort-based claims, which it contends are beyond the scope of the parties' arbitration clause. The district court ruled that all issues presented in this case, including the tort-based issues raised by P & P, were within the scope of the parties' arbitration

-20-

clause, and therefore arbitrable. Our "review of . . . a district court decision confirming an arbitration award on the ground that the parties agreed to submit their dispute to arbitration should proceed like review of any other district court decision finding an agreement between parties," and we should "accept[] findings of fact that are not 'clearly erroneous' but decid[e] questions of law de novo." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995).

The parties' arbitration clause provides that "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" shall be arbitrable. I App. at 18 (emphasis added). The Supreme Court has noted that such an arbitration clause, not limited to questions of contractual interpretation, is a "broad" one. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967). We must keep in mind that the strong presumption in favor of arbitrability, see Moses H. Cone, 460 U.S. at 24-25, "applies with even greater force" when such a broad arbitration clause is at issue. Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir. 1991).

P & P argues that the district court erred in ruling that P & P's tort-based claims "arise out of" or are "related to" the Agreement, and are therefore arbitrable. P & P asserts that "claims relating to third-party contracts," such as P & P's claims that Sutter tortiously interfered with P & P's contracts with its employees, can never fall within the scope of an "arising out of or relating to"

-21-

arbitration clause. Appellant's Br. at 30-31. To support this contention, P & P cites Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987). In that case, the court, construing a similarly-worded arbitration clause, held that RICO claims, Robinson-Patman Act claims, common law fraud claims, unfair competition claims, and unjust enrichment claims were all arbitrable. Id. at 847-56. However, the court held that a claim of tortious interference with contractual relations was not arbitrable. Id. at 856. The court explained that "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' [contract], then those claims must be arbitrated, whatever the legal labels attached to them." Id. at 846 (citation omitted). Applying this test, the court held that the tortious interference claim was unrelated, on the facts of that case, to the agreement between the parties, and therefore did not "relate to" the agreement. Id. at 856.

In other cases, however, courts have held that a claim of tortious interference with contract is "related to" or "arises out of" a contract. See, e.g., American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 94 (4th Cir. 1996). There is no per se rule, such as that suggested by P & P here, that claims relating to third-party contracts can never be "related to" two other

-22-

parties' contractual agreement. Rather, all claims with "a significant relationship to the [Agreement,] regardless of the label attached" to them, arise out of and are related to the Agreement. See id. at 93; Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 384 (11th Cir. 1996) (stating that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted"); Sweet Dreams Unlimited, Inc. v. Dial-a-Mattress Int'l, Ltd., 1 F.3d 639, 643 (7th Cir. 1993) (stating that "a party may not avoid a contractual arbitration clause merely by casting its complaint in tort").

We agree with the district court, and with Sutter, that the tort-based claims alleged by P & P arise out of, or relate to, the Agreement itself. As the district court succinctly stated,

> [P & P's] allegations of improper conduct by [Sutter] are limited to actions taken in connection with [Sutter's] decision to terminate the [A]greement. The purported interference with [P & P's] contracts with its employees as well as its relationship with third parties is based solely on the actions of [Sutter] at the time it terminated the . . . Agreement. . . . These contentions each relate to the primary claim that [Sutter] breached the agreement by terminating it. It is the manner in which that termination occurred that forms the basis for the[] additional causes of action. Therefore, these causes of action are related to the claim which is expressly subject to arbitration.

I App. at 160. P & P's tort-based claims were related to the Agreement and were therefore arbitrable, and, accordingly, the arbitrator did not exceed his powers by ruling on them. Because there is no ground on which the district court should

-23-

properly have vacated or modified the arbitration award, the district court correctly confirmed it pursuant to § 9.

## CONCLUSION

For the reasons discussed above, the judgment of the district court is AFFIRMED.