**VIA FONE, INC., Plaintiff,**

v.

**WESTERN WIRELESS CORPORATION, Voicestream Wireless Corporation, Voicestream Wireless Holding Corporation and Omnipoint Communications Enterprises, Inc., Defendants.**

**No. 00–1070–JTM.**

United States District Court,
D. Kansas.

July 11, 2000.

**1148**

Joseph H. Cassell, Kevin Todd Stamper, Cassell & Lower, L.L.C., Wichita, KS, for plaintiff.

Gary M. Austerman, Christopher A. McElgunn, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter is before the court on the defendants' motion to dismiss, or in the alternative, to stay action and compel arbitration. The motion is fully briefed and ripe for the court's consideration. The court has carefully considered the parties' submissions, and for the reasons set forth below grants the defendants' motion.

### I. Motion to Dismiss Standards

In ruling on a motion to dismiss, the court must accept all the well-pleaded factual allegations of the complaint as true and must view them in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior Secretary,* 163 F.3d 1150, 1152 (10th Cir.1998). "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### II. Factual Background

On or about August 31, 1998, Via Fone entered into a Dealer Agreement ("Agreement") with Omnipoint Communication Enterprises, Inc. ("Omnipoint") through its authorized agent, Western Wireless Corporation ("Western Wireless"), to become a Preferred Dealer for the sale of VoiceStream Wireless ("VoiceStream") equipment and services. The terms of the Agreement require VoiceStream to regularly deliver cellular telephones and other merchandise to Via Fone for distribution to sub-dealers and resale to the general public. It also requires VoiceStream to provide service and support for each and every telephone sold by Via Fone. In exchange for agreeing to become a Preferred Dealer for VoiceStream, Via Fone agreed to market products in the Wichita area using campaigns approved by VoiceStream representatives. Additionally, Via Fone

agreed to achieve a quota of 200 new wireless service activation contracts per month for the duration of the Agreement.

Under the Agreement, VoiceStream provided a price list of telephones available for purchase and resale by its Preferred Dealers. It also established the price for which telephones would be resold. Via Fone tendered payment in full for telephones when it received them, in accordance with the terms of the Agreement. Via Fone claims that during the course of the Agreement, VoiceStream failed to deliver merchandise Via Fone ordered, and instead directed inventory to other "Preferred Dealers" in the Wichita sales area. Via Fone claims that several times since the parties entered into the Agreement, VoiceStream substantially increased the sales prices of all telephones sold to Via Fone. For instance, Nokia Model 5190 telephones once available for purchase by Via Fone for $44.95 by October 1999 were sold to plaintiff for $164.95, while Nokia Model 6190 telephones, with a previous cost of $79.95, were now sold for $219.95. In addition, VoiceStream allegedly demanded that Via Fone charge retail prices below dealer cost for these telephones; e.g., retail prices of $99.95 for the Nokia Model 5190 and $160.95 for the Nokia Model 6190. Via Fone claims that while VoiceStream and its various enterprises, agents, and/or employees dramatically increased the dealer cost to it, they continued charging substantially lower prices to other "Preferred Dealers" of larger size and market share in the Wichita sales area.

As a result of the alleged anti-competitive, preferential and discriminatory sales practices of the defendants, Via Fone claims it lost market share in the Wichita sales area, and that its customer base continues to disintegrate. Because of the defendants' actions, Via Fone filed this action on February 17, 2000, asserting claims under the Robinson–Patman Act, 15 U.S.C. § 13 and the Clayton Antitrust Act, 15 U.S.C. § 15. The defendants argue that Via Fone's claims are subject to mandatory arbitration under the Agreement and

contend that dismissal of this action is mandated by the provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., which require contractual arbitration clauses to be enforced in their entirety. Via Fone argues that this case is not subject to the Agreement's mandatory arbitration clause because its claims sound in tort; therefore, they do not "arise out of" the Agreement and are not subject to arbitration. It also argues that arbitration cannot be compelled against companies, entities, or agents that are not parties to the Agreement, i.e., VoiceStream Wireless Corporation and VoiceStream Wireless Holding Corporation.

## III. Analysis

The issue raised by the defendants' motion is whether Via Fone's claims are subject to the mandatory arbitration provisions of the Agreement. Section 12.11 of the Agreement provides for arbitration as follows:

> Except as stated in paragraph 12.11(e) below, all claims (including counter-claims and cross-claims) and disputes between Dealer and Company, shall be resolved by submission to binding arbitration. The parties shall submit any such disputes to the Seattle, Washington offices of Judicial Arbitration & Mediation Services, Inc. ("JAMS"). If there are no such offices of JAMS, the parties shall arbitrate their disputes under the commercial arbitration rules of the American Arbitration Association, before one neutral arbitrator, except to the extent that those rules are modified herein.
>
> . . . . .
>
> All claims and disputes that arise under this Agreement shall be submitted to arbitration by initiating the arbitration not later than one (1) year after the act or omission giving rise to the claim or dispute occurred. The failure to initiate arbitration within the one year period constitutes an absolute bar to the insti-

tution of any proceedings based on such act or omission.

"Under the FAA, a 'court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Williams v. Imhoff,* 203 F.3d 758, 764 (10th Cir.2000) (quotation omitted). " '[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration,' and thus, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Armijo v. Prudential Ins. Co.,* 72 F.3d 793, 797 (10th Cir.1995) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

The court engages in a two-part inquiry to determine whether Via Fone's claims fall within the scope of the Agreement's arbitration clause. *Williams,* 203 F.3d at 764. First, the court must " 'determine whether the parties agreed to arbitrate' " the claims at issue. *Id.* (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 626, 105 S.Ct. 3346). " '[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.' " *Id.* If the court determines the Agreement covers Via Fone's claims, its second inquiry is " 'whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims.' " *Id.* (quoting *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. 3346).

To determine whether the parties agreed to arbitrate Via Fone's antitrust claims, the court must look to the language of the arbitration clause. The clause provides that *"all claims* (including counterclaims and cross-claims) and disputes between Dealer and Company, *shall be resolved* by submission to binding arbitration." Agr. § 12.11(a) (emphasis added). "The Supreme Court has noted that such an arbitration clause, not limited to questions of contractual interpretation, is a 'broad' one." *P & P Indus., Inc. v. Sutter*

*Corp.,* 179 F.3d 861, 871 (10th Cir.1999) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). In addition, "the strong presumption in favor of arbitrability ... 'applies with even greater force' when such a broad arbitration clause is at issue." *Id.* (quoting *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991)).

Via Fone argues that the arbitration clause cannot apply when there is a dispute with non-parties to the written contract, *i.e.,* VoiceStream, and it cannot apply to tort claims that were not contemplated to be within the scope of the written agreement. According to Via Fone, this case relates to the actions of Western (a signatory to the Agreement), VoiceStream (a non-signatory), and their dealings with competing dealers in the marketplace.

In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. *See Mitsubishi,* 105 S.Ct. at 3352 n. 9, 3353 n. 13. If the allegations underlying the claims "touch matters" covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them. *See id.* at 3353 n. 13. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987); *see also Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382, 384 (11th Cir.1996) (stating that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted"); *Sweet Dreams Unlimited, Inc., v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 643 (7th Cir.1993) (stating that "a party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort' ") (quotation omitted). "[A]ll claims with 'a significant relationship to the [Agreement,] regardless of the label attached' to them,

arise out of and are related to the Agreement." *P & P Indus.*, 179 F.3d at 871.

 The court finds that Via Fone's antitrust claims are within the scope of the Agreement's arbitration provision. The court cannot imagine a more inclusive arbitration provision. It calls for *"all claims (including counterclaims and cross-claims) and disputes between Dealer and Company"* to be submitted to binding arbitration. It is not limited to questions of contractual interpretation; therefore, the strong presumption in favor of arbitrability "applies with even greater force." *Id.*

In *Genesco, Inc., v. T. Kakiuchi & Co., Ltd.*, the Second Circuit, construing a similarly-worded arbitration clause, held that RICO claims, Robinson–Patman Act claims, common law fraud claims, unfair competition claims, and unjust enrichment claims were all arbitrable. 815 F.2d at 847–56. Specifically, with regard to the Robinson–Patman Act claims, the court found that the claims were based on "the imposition of overcharges," which the court found to have "arisen under" the parties' sales agreements. *Id.* at 853. Similarly, in this case, Via Fone alleges that, compared to other "Preferred Dealers" of larger size and market share in the Wichita area, it is being overcharged for its VoiceStream inventory. Via Fone's claims regarding the price it is being charged for its VoiceStream inventory and the prices it is required to charge for the inventory are all "significantly related" to the Agreement between Via Fone and Western Wireless, and thus arbitrable.

Because the court has found that the Agreement covers Via Fone's claims, it must next determine whether there are any external legal restraints that would prevent those claims from being arbitrated. "In particular, the question is whether Congress intended to exclude [Robinson–Patman] claims from arbitration." *Williams*, 203 F.3d at 767 (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)) ("holding that arbitration agreements are enforceable with re-

spect to statutory claims in the absence of evidence of 'congressional intent to exclude ... [those] claims from the dictates of the Arbitration Act'"). In a well-reasoned opinion, which closely analyzes Supreme Court and other Circuit court cases, the Eleventh Circuit held that domestic antitrust disputes, such as those brought by Via Fone, are arbitrable. *Kotam Elecs., Inc. v. JBL Consumer Prods., Inc.*, 93 F.3d 724 (11th Cir.1996) (en banc), *cert. denied*, 519 U.S. 1110, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997). Having carefully considered that opinion, the court agrees with the Eleventh Circuit and concludes that Congress did not intend to prohibit arbitration of Robinson–Patman claims. *See also Genesco, Inc.*, 815 F.2d at 853 (noting that "the Supreme Court found no congressional purpose to preclude arbitration of international antitrust claims," and therefore holding that the plaintiff's international Robinson–Patman claims were arbitrable as a matter of law).