UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

Consolidated Cases Nos. 01-60228, 01-60229, 01-60230,
01-60231, 01-60232, 01-60233, 01-60234,01-60235,
01-60236, 01-60237, 01-60238

_____

BANK ONE, N.A.,

Plaintiff-Appellant,

VERSUS

MYRA MAE SHUMAKE, DARLENE VAUGHN, ANDIA WILLIAMSON, KARREN SAM,
VIRGINIA WILLIS, WILLIE WILLIS, LAVERN WILLIS, BRAINARD LEWIS,
a/k/a Brianard Lewis, ROBIN WILLIS, DANITA WILLIS; KIRBY WILLIS,
DINA THOMAS AND ROSE WILLIS,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____
February 15, 2002

Before KING, Chief Judge, and DAVIS and MAGILL,[*] Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Bank One challenges the district court's dismissal of its suit
to compel arbitration. Bank One contends that the reasoning of the
U.S. Supreme Court's decision in El Paso Natural Gas Co. v.

_____

[*]Circuit Judge, U.S. Court of Appeals for the Eighth Circuit,
sitting by designation.

1

Neztsosie[1] requires us to conclude that the tribal exhaustion doctrine should not apply to suits to compel arbitration under the Federal Arbitration Act.[2] For the reasons that follow, we disagree. We therefore affirm the district court's order dismissing Bank One's action for failure to exhaust tribal remedies.

## I.

In March 1995, a door-to-door salesman sold home satellite systems to several members of the Choctaw Indian tribe at their homes on the Choctaw Indian Reservation in Mississippi. The salesmen arranged to allow the purchaser to use credit provided by Bank One. Bank One required prospective purchasers ("Cardmembers") to complete and execute a Credit Application, accompanied by a Revolving Credit Card Plan and Disclosure Statement (the "Cardmember Agreement"), and a Security Agreement. The application provided that extensions of credit would be deemed to occur in Ohio.

In March 1998, Bank One contends it notified its Cardmembers of a modification to the Cardmember Agreement that inserted an arbitration clause requiring that all disputes be resolved by arbitration pursuant to the Federal Arbitration Act (FAA). Some members of the Tribe contend that they did not receive the

---

[1] 526 U.S. 473, 119 S.Ct. 1430 (1999).

[2] 9 U.S.C. §§ 1-16.

modification.

In the summer of 2000, several members of the Mississippi Band of Choctaw Indians, including Myra Rae Shumake, sued Bank One in the Tribal Court of the Mississippi Band of Choctaw Indians ("Tribal Court") seeking damages and injunctive relief. The complaints alleged that Bank One financed the transaction through "bogus" credit cards, and that it concealed and failed to disclose material information regarding the credit transaction.

Upon receipt of notice of the Tribal Court actions, Bank One promptly filed suits in the federal district court under § 4 of the FAA against each Cardholder seeking to compel arbitration of their Tribal Court claims, asserting that those claims are subject to a valid and binding arbitration agreement. The Cardholders immediately moved for dismissal of Bank One's district court action or remand to the Tribal Court, arguing that the tribal exhaustion doctrine requires federal courts to allow tribal courts to have the first opportunity to rule on the question of its jurisdiction. The district court found that the tribal exhaustion doctrine applied to these cases and dismissed Bank One's suits so that the Tribal Court could first address the question of its jurisdiction.

Bank One appeals the dismissals, contending that the district court inappropriately applied the tribal exhaustion doctrine to these FAA cases and that the arbitration clause in the contract waived any right to tribal exhaustion. The cases have been

3

consolidated on appeal.

II.

The standard of review of district court decisions to stay or dismiss proceedings on abstention grounds is abuse of discretion, but to the extent that such a decision rests on an interpretation of law, our review is de novo.[3]

III.

A.

We turn first to Bank One's argument that the tribal exhaustion doctrine should be inapplicable to actions to compel arbitration under the FAA. In considering this issue, we first review the Supreme Court cases on the tribal exhaustion doctrine.

The Supreme Court established the doctrine in <u>National Farmers Union Insurance Co. v. Crow Tribe</u>.[4] In that case, a Crow Indian minor was struck by a motorcycle in the parking lot of a school owned by the state, but located on the Crow Indian Reservation. The minor's parents sued the school district in tribal court and obtained a default judgment. The school district and its insurer then filed suit in federal court seeking an injunction against

---

[3] *See, e.g.,* <u>Safety National Casualty Corp. v. Bristol-Myers Squibb Co.</u>, 214 F.3d 562, 564 (5th Cir. 2000); *citing* <u>Black Sea Inv. Ltd. v. United Heritage Corp</u>, 204 F.3d 647, 649-50 (5th Cir. 2000); <u>Murphy v. Uncle Ben's, Inc.</u>, 168 F.3d 734, 737 (5th Cir. 1999); <u>Sutter Corp. v. P & P Indus., Inc.</u>, 125 F.3d 914, 917 (5th Cir. 1997).

[4] 471 U.S. 845, 105 S.Ct. 2447 (1985).

4

execution of the judgment and further proceedings in tribal court on the theory that the tribal court lacked subject matter jurisdiction in civil actions against non-tribe members under 28 U.S.C. § 1331.  The district court granted the injunction, but a divided panel of the Ninth Circuit reversed.

The Supreme Court held that as a threshold matter, federal courts may determine whether a tribal court has exceeded its lawful jurisdiction because the extent of tribal sovereignty is a matter of federal law for the purposes of § 1331.[5]  The Supreme Court held, however, that so long as "the action is not patently violative of express jurisdictional prohibitions,"[6] the first examination of tribal court jurisdiction should take place in the tribal court rather than in federal court.

> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of ... [a] "procedural nightmare" ... will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own

---

[5] *See id.* at 852-53.

[6] *Id.* at 857 n.21.  The other two exceptions--bad faith or lack of opportunity to challenge the tribal court's jurisdiction--do not apply here.

5

jurisdiction and to rectify any errors it may have made.[7]

The next important Supreme Court decision on the tribal exhaustion doctrine is Iowa Mutual Insurance Co. v LaPlante,[8] in which the Court extended the doctrine to diversity cases. In that case, LaPlante, a member of the Blackfeet Indian Tribe filed suit for personal injuries in tribal court against his employer, a ranch located on the Reservation. He also sued the ranch's insurer for bad faith refusal to settle. The tribal court ruled that once LaPlante amended his complaint to allege facts on which to base jurisdiction, it would entertain jurisdiction over the action. Iowa Mutual then sued the LaPlantes, the ranch, and its owners, in federal district court alleging diversity of citizenship under 28 U.S.C. § 1332 as the basis of jurisdiction, and seeking a declaration that it had no duty to defend or indemnify the ranch or its owners because the injuries fell outside the policy. The district court dismissed the action, holding that it lacked jurisdiction because the tribal court must be given the first opportunity to determine its own jurisdiction. The Ninth Circuit affirmed.

The Supreme Court concluded that the district court did not lack subject matter jurisdiction but that "the federal policy supporting tribal self-government directs a federal court to stay

[7] *Id.* at 856-57.

[8] 480 U.S. 9, 107 S.Ct. 981 (1987).

6

its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.'"[9] The Court noted that it had "repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government.... Tribal courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their development."[10] The Court extended the doctrine to diversity cases because when "state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, state courts are generally divested of jurisdiction as a matter of federal law."[11]

The Court held that the sovereignty of tribal courts can only be impaired by an express indication of Congressional intent. "Because the Tribe retains all inherent attributes of sovereignty that have not been divested by the Federal government, the proper inference from silence ... is that the sovereign power ... remains intact."[12] In response to the argument that the tribe lacked authority over non-members on the reservation, the Court responded that "[t]ribal authority over the activities of non-Indians on

---

[9] *Id.* at 16, *quoting* National Farmers at 857.

[10] *Id.* at 14, 107 S.Ct. at 975 (citations omitted).

[11] *Id.* at 15.

[12] *Id.* at 18, *quoting* Merrion v. Ticarilla Apache Tribe, 455 U.S. 130, 149 n.14 (1982).

reservation lands is an important part of tribal sovereignty."[13]

B.

This brings us to the most recent Supreme Court case, the primary basis of Bank One's argument. In <u>El Paso Natural Gas v. Neztsosie</u>,[14] two members of the Navajo Nation sued El Paso in tribal court for compensatory and punitive damages under Navajo tort law for injuries arising from exposure to radioactive and other hazardous materials. El Paso sued in the district court to enjoin the Neztsosies from pursuing their claims in tribal court. The district court denied the injunctions under the tribal exhaustion doctrine except to the extent that the claims fell under the Price-Anderson Act,[15] but allowed the tribal court to determine in the first instance whether the claims fell under Price-Anderson. The Ninth Circuit modified the order to permit the Tribal Court to resolve all issues.

---

[13] *Id.*, *citing* <u>Montana v. U.S.</u>, 450 U.S. 544, 565-66 (1981). Although tribes usually do not have jurisdiction over non-Indians for activities off the reservation or Indian-fee land, <u>Montana</u> noted several exceptions. As a threshold inquiry under the tribal exhaustion doctrine, we must determine whether the tribal court's jurisdiction is explicitly limited. <u>Montana</u> limits it in many situations. One of its exceptions, however, applies here: "A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter into consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." <u>Montana</u> at 565; *see also* <u>TTEA v. Ysleta del Sur Pueblo</u>, 181 F.3d 676, 684 (5th Cir. 1999).

[14] 526 U.S. 473 (1999).

[15] 42 U.S.C. § 2210.

The Supreme Court reversed as to the claims under the Price-Anderson Act and concluded that petitioners were not entitled to pursue their Price-Anderson Act claims in Tribal Court. The Court found that the case differed from National Farmers and Iowa Mutual because "[b]y its unusual preemption provision,

> the Price-Anderson Act transforms into a federal action "any public liability action arising out of or resulting from a nuclear incident[.]" The Act not only gives a district court original jurisdiction over such a claim but provides for removal to a federal court as of right if a putative Price-Anderson action is brought in a state court. Congress thus expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price-Anderson claim on the merits and for determining whether a claim falls under Price-Anderson when removal is contested.[16]

Given the preemptive scope of the Price-Anderson Act, the Court held that "[a]ny generalized sense of comity toward nonfederal courts is obviously displaced by the provisions for preemption and removal from state courts, which are thus accorded neither jot nor tittle of deference."[17] Accordingly, the Court found that "the comity rationale for tribal exhaustion normally appropriate to a tribal court's determination of its jurisdiction stops short of the Price-Anderson Act."[18]

Bank One contends that this decision significantly altered the legal landscape by severely restricting the tribal exhaustion

---

[16] *Id.* at 484 (internal citations omitted).

[17] *Id.* at 485-86.

[18] Neztsosie, 526 U.S. at 487.

9

doctrine.  We disagree.  The Supreme Court noted in <u>Neztsosie</u> that

its ruling does *not* say

> that the existence of a federal preemption defense in the
> more usual sense would affect the logic of tribal
> exhaustion. Under normal circumstances, tribal courts,
> like state courts, can and do decide questions of federal
> law, and there is no reason to think that questions of
> federal preemption are any different.  The situation here
> is the rare one in which statutory provisions for
> conversion of state claims to federal ones and removal to
> federal courts express congressional preference for a
> federal forum.[19]

<u>Neztsosie</u> therefore teaches that a federal court need not stay

its hand pending tribal court adjudication under the Price-Anderson

Act.  This brings us to the question we must decide: Does the FAA

have the pre-emptive force of the Price-Anderson Act, thereby

displacing comity considerations underlying the tribal exhaustion

doctrine?

Although the FAA reflects a strong policy favoring the

enforcement of arbitration clauses,[20] unlike the Price-Anderson Act,

the FAA does not provide an independent ground of federal

jurisdiction.  To sue in federal court to enforce an arbitration

claim, a petitioner must demonstrate the existence of federal

---

[19] *Id.* at 485 n.7 (internal citation omitted).

[20] *See, e.g.,* <u>Grigson v. Creative Artists Agency</u>, 210 F.3d 524,
526 (5th Cir. 2000) ("Arbitration is favored in the law."), *citing*
<u>Moses H. Cone Memorial Hospital v. Mercury Construction</u>, 460 U.S.
1, 24-25 (1983).

subject matter jurisdiction on the *underlying* contract claim.[21]  As a result, suits to compel arbitration may only be brought in federal court if diversity of citizenship or a federal question exists.[22]

Also, federal substantive law under the FAA only applies to contracts involving three types of transactions: (1) transactions in interstate commerce, (2) transactions in foreign commerce, or (3) maritime transactions.  Otherwise state substantive law applies.[23] Even if FAA substantive law applies, federal courts must still use state contract law to fill the gaps not covered by federal law.[24]  If a plaintiff can find no subject matter jurisdiction in federal court to enforce his right to arbitrate

---

[21] "A party aggrieved ... may petition any United States district court *which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties,* for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

[22] Diversity of citizenship is the most common basis of jurisdiction.  *See* Wright & Miller, 13B FEDERAL PRACTICE AND PROCEDURE 172 (1984).

[23] 9 U.S.C. § 2.

[24] *See* Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681 (1996) (state contract law and defenses); Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468 (1989) (state procedural rules). In the application of state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration."  Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996), *quoting* Volt, 489 U.S. at 488.

11

under the FAA, he must rely on the state court to enforce these rights.[25]  The Supreme Court commented on this arrangement in <u>Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.</u>:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction.... Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute.... [A]lthough enforcement of the Act is left in large part to the state courts, it nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate.[26]

The FAA may be further distinguished from Price-Anderson because, as <u>Neztsosie</u> observes, Price-Anderson provides for a federal forum to decide the merits of a controversy, whereas under the FAA, the merits will be decided by arbitration.

In sum, while the FAA does reflect a policy strongly favoring the enforcement of arbitration clauses, it does not reflect a congressional intent for federal courts to occupy the entire field of arbitration law.[27]

After examining the two statutes, we agree with the district

---

[25] <u>Commercial Metals Co. v. Balfour, Guthrie, & Co.</u>, 577 F.2d 264, 269 (5th Cir. 1978)("It is clear that the state courts are entirely able, as well as required, to apply the United States Arbitration Act and compel arbitration pursuant to the Act if the statutory requisites are present.")

[26] 460 U.S. 1, 26 n. 32, 103 S.Ct. 927, 942 n. 32 (1983) (internal citations omitted).

[27] *See* <u>Volt</u>, 489 U.S. 468.

12

court that

> Congress has not expressed an intent to provide a federal forum for *all* suits to compel arbitration, but has instead extended a federal forum *only* to those suits for which there is otherwise an independent basis for federal jurisdiction; the FAA itself confers no jurisdiction on the federal courts.... In this case, then, in contrast to the "rare" situation presented in <u>Neztsosie</u>, Bank One would have no "right" to a federal forum in the absence of diversity jurisdiction.... Here the jurisdictional basis for Bank One's complaint is not the FAA at all, but diversity of citizenship jurisdiction, which alone is not a sufficient basis to override the federal policy of deference to tribal courts.

C.

Bank One also argues that courts must apply the abstention principles included in <u>Colorado River</u>[28] when considering tribal exhaustion. We disagree. The tribal exhaustion doctrine is in no way based on <u>Colorado River</u>. <u>Iowa Mutual</u>'s reference to the <u>Colorado River</u> doctrine as another comity-based abstention doctrine does not suggest that the <u>Colorado River</u> principles apply to a tribal exhaustion case.[29] The district court correctly distinguished the two abstention doctrines, on the ground that the <u>Colorado River</u> doctrine "proceeds from the premise that 'the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them"' and that therefore, the pendency of litigation in state court is not a bar to proceedings

---

[28] <u>Colorado River Water Conservation District v. U.S.</u>, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

[29] *See* <u>Iowa Mutual</u>, 480 U.S. at 16 n.8.

13

in federal court involving the same subject matter in the absence of "exceptional circumstances."[30] The policy which animates the tribal exhaustion doctrine, however, "subordinates the federal court's obligation to exercise its jurisdiction to the greater policy of promoting tribal self-government."[31]  <u>Colorado River</u> abstention is thus the exception to the rule, whereas tribal exhaustion is the rule rather than the exception.  The latter is the appropriate doctrine to apply here.

IV.

A.

Relying on <u>C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma</u>,[32] Bank One also contends that the arbitration clause waives tribal exhaustion.  In <u>C&L</u>, the Potawatomi Indian Tribe contracted with C&L to install a roof on a building owned by the Tribe off the reservation.  The contract at issue in the case included an arbitration clause and a choice of law clause.  When the Tribe decided to change the roofing material and sought new bids, C&L submitted an arbitration demand claiming that the Tribe had breached the contract.  The Tribe asserted sovereign immunity and refused to participate in the arbitration. The arbitrator awarded damages to C&L, which then sought

---

[30] <u>Bank One</u>, 144 F.Supp.2d at 649.

[31] *Id.*

[32] 532 U.S. 411, 121 S.Ct. 1589 (2001).

14

enforcement in state court.  The tribe asserted its immunity again. The state court denied the motion and confirmed the award and the state appellate court affirmed.

The Supreme Court vacated and remanded the case to the state court.  The Court held that when a tribe consents to dispute resolution by arbitration, it waives its sovereign immunity.[33]

Bank One argues that if a tribe, by agreeing to an arbitration clause waives sovereign immunity, such an agreement must also waive tribal exhaustion.  We need not decide this issue because in the instant case the Tribe was not a party to the contract.  The litigation in C&L involved a contract between a bank and a *tribe*, rather than a contract between a bank and individual members of a tribe.  We decline to extend C&L to contracts between commercial entities and individual tribe members which would have the effect of allowing individual members of a tribe to waive tribal exhaustion.

### B.

Bank One further argues that decisions by other circuits that find forum selection clauses to waive tribal exhaustion should extend to arbitration clauses.[34]  The arbitration clause at issue

---

[33] *Id.* at 1594-95.

[34] *See, e.g.,* Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803 (7th Cir. 1993); F.G.S. Constructors, Inc. v. Carlow, 64 F.3d 1230 (8th Cir. 1995).  For the opposite approach, *see, e.g.,* Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth., 207 F.3d 21, 33 (1st Cir.2000); Basil Cook Enterprises, Inc. v. St. Regis

in this case does not select a judicial forum for resolution of disputes. An arbitration clause that attempts to foreclose any and all access to courts bears little resemblance to a forum selection clause, and the cases appellant relies upon have no application to this case.

V.

For the reasons stated above, the district court's order dismissing Bank One's suit to compel arbitration for failure to exhaust tribal remedies is

AFFIRMED.

---

Mohawk Tribe, 117 F.3d 61 (2nd Cir. 1997). Altheimer & Gray may be distinguishable from the instant case at least insofar as its decision that tribal exhaustion was not necessary was based on the lack of a pending tribal action or a challenge to tribal court jurisdiction. *See*, Altheimer & Gray, 983 F.2d at 814.