**FIDELITY AND GUARANTY INSURANCE COMPANY,** Plaintiff,

v.

**Harold R. BRADLEY, d/b/a Bradley Engineering Group, Defendant.**

**No. CIV. 2:02CV47.**

United States District Court, W.D. North Carolina.

July 15, 2002.

James A. Roberts, III, Lewis & Roberts, P.L.L.C., Raleigh, NC, A. Graham Shirley, Lewis & Roberts, PLLC, Charlotte, NC, for plaintiff.

W. Scott Jones, Philip S. Anderson, Long, Parker & Warren, P.A., Asheville, NC, for defendant.

### MEMORANDUM AND ORDER OF DISMISSAL

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendant's motion to dismiss to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de novo* review of those

portions of the Recommendation to which specific objections were filed, the undersigned finds that the Defendant's motion should be granted. **28 U.S.C. § 636(b); Fed.R.Civ.P. 72.**

## I. FACTUAL FINDINGS

Harold Bradley, an enrolled member of the Eastern Band of Cherokee Indians ("Tribe"), is a general contractor and professional engineer doing business as Bradley Engineering Group. **Affidavit of Harold R. Bradley, filed April 29, 2002.** He entered into a construction contract with the Tribe in May 2000 for a project for the Cherokee Ceremonial Grounds. *Id.* Because that contract required that he post a performance bond, Bradley entered into a contract with Fidelity and Guaranty Insurance Company (Fidelity) for a performance bond in the amount of $515,400.00 in June 2000. *Id.;* **Affidavit of Kimberly D. Zanotta, filed May 23, 2002, at 2.** In February 2001, the Tribe declared Bradley in default and in April 2001, the Tribe sued him in Tribal Court for breach of contract and fraud. *Id.,* at **Exhibit C.** The Tribe also made a demand on Fidelity to honor the performance bond and an agreement was reached between the two pursuant to which a substitute contractor was hired and substantial sums were paid. *Id.,* at 3–4. There is no indication in the pleadings that Bradley was consulted by Fidelity before or during this process.

While the Tribal Court action between the Tribe and Bradley was pending, Fidelity brought this action against Bradley for indemnity under the terms of its performance bond. The complaint alleges in pertinent part:

> Upon receipt of said demand under the Performance bond, [Fidelity] thereafter conducted an investigation into the alleged default of its principal, Bradley. Said investigation included retaining a professional engineer and conducting visits to the Project site.
>
> After completion of its investigation, [Fidelity] determined that pursuant to its obligations under the Performance Bond, [Fidelity] was required to take those actions necessary to insure completion of the Contract, including correction of defective work.

**Complaint, filed February 21, 2002, at 4–5.**

## II. STANDARD OF REVIEW

■■■■ Defendant has moved to dismiss the action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A plaintiff has the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 646 (4th Cir.1999). A motion to dismiss for lack of subject matter jurisdiction should be granted only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.* The material jurisdictional facts here are not in dispute.

## III. DISCUSSION

The Defendant objects to the Magistrate Judge's finding that the Plaintiff is not obligated to exhaust Tribal Court remedies prior to bringing this action. As noted *supra,* this is an action for indemnification between a non-Indian and an Indian. The Court also observes that the facts involved in this indemnification action are also at issue in the pending Tribal Court action. *See, e.g., Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works,* 722 F.2d 1160, 1163 (4th Cir.1983) (**A surety is obligated to act in good faith in determining to pay performance bond.**); *accord, Amwest Surety Ins. Co. v. Vaughn,* 100 F.Supp.2d 335 (E.D.N.C.2000).

■ There are two issues before this Court: (1) Does the Tribal Court have jurisdiction and; (2) if so, should this Court abstain from exercising its jurisdiction in favor of the doctrine of tribal exhaustion.

To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana v. United States*, 450 U.S. 544, 565–66, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) (citations omitted); *accord, Nevada v. Hicks*, 533 U.S. 353, 359 n. 3, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (*"**Montana recognized an exception to this rule for tribal regulation of 'the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements.... [O]ther arrangement' is clearly another *private consensual* relationship, from which the official actions at issue in this care are far removed."** (Quoting Montana, supra*)).[1] "[W]e start with the premise that civil jurisdiction over the activities of non-Indians on reservations lands presumptively lies in tribal courts, unless affirmatively limited by a specific treaty provision or federal statute." *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1419 (8th Cir.1996).

The Cherokee Court of Indian Offenses or any successor Cherokee Court shall have jurisdiction over all persons in civil suits which arise on the Cherokee Indian Reservation and involve the personal, property or legal rights of an individual Indian or an Indian owned business, corporation or other legal entity.

   .    .    .    .    .

■ The Cherokee Court of Indian Offenses or any successor Cherokee Court shall exercise jurisdiction over disputes involving any contract that is negotiated or executed on Indian trust land, or involves any interest in Cherokee trust lands and contractual right[s] of the Tribe.

The Cherokee Court of Indian Offenses or any successor Court shall exercise jurisdiction over all persons, firms, corporations, partnerships or other legal business entities which conduct business on Cherokee trust lands. Such jurisdiction shall be limited to transactions involving or affecting individual Indians, Indian owned businesses, Tribal laws and policy or Indian property.

The Cherokee Code, § 1–2(a), (d) & (e) (1999). The Tribal Court clearly has jurisdiction over the dispute at issue; a dispute between a non-Indian which entered into a consensual contractual relationship with an Indian for a performance bond to cover the construction of the Cherokee Ceremonial Grounds Entrance on tribal land and for the benefit of the Tribe.

---

**1.** The Magistrate Judge concluded that *Nevada* required this Court to retain the case. However, the *Nevada* court limited its holding to the factual scenario there presented and did not erode the court's earlier precedent concerning the doctrine of tribal exhaustion. "Our holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law." *Nevada*, 533 U.S. at 358 n. 2, 121 S.Ct. 2304.

█ The Magistrate Judge found that this Court should not abstain in favor of tribal exhaustion primarily because there is no pending action in tribal court between Fidelity and Bradley. The case law, however, mandates that this Court do so. The Supreme Court [in *National Farmers Union Insurance Co. v. Crow Tribe* ] held ... that so long as the action is not patently violative of express jurisdictional prohibitions, the first examination of tribal court jurisdiction should take place in the tribal court rather than in federal court.

. . . . .

The next important Supreme Court decision on the tribal exhaustion doctrine is *Iowa Mutual Insurance Co. v. La-Plante,* in which the Court extended the doctrine to diversity cases. In that case, LaPlante, a member of the Blackfeet Indian Tribe[,] filed suit for personal injuries in tribal court against his employer, a ranch located on the Reservation. He also sued the ranch's insurer for bad faith refusal to settle.... The Supreme Court concluded that the district court did not lack subject matter jurisdiction but that the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction.... Tribal courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their development.

. . . . .

Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty.

. . . . .

The policy which animates the tribal exhaustion doctrine ... subordinates the federal court's obligation to exercise its jurisdiction to the greater policy of promoting tribal self-government. *Colora-do River* abstention is thus the exception to the rule, whereas tribal exhaustion is the rule rather than the exception.

*Bank One, N.A. v. Shumake,* 281 F.3d 507, 510–512, 515 (5th Cir.2002) **(In a suit between tribal members and the bank financing their purchases of satellite systems, the arbitration clause in the contracts could not be used to usurp the requirement of tribal court exhaustion. The federal court action was thus dismissed for failure to exhaust those remedies.) (footnotes and internal citations omitted).** The undersigned can find nothing in the facts here presented which would excuse the longstanding policy of tribal court exhaustion. The construction project was on land owned by the Tribe; indeed, the initial construction contract was between Bradley and the Tribe. Tribal funds were used to pay for the construction and thus, any alleged breach thereof would directly impact tribal economic security and health. And, Fidelity entered into a consensual commercial relationship with a member of the Tribe. Whether Fidelity is entitled to be indemnified by Bradley involves the same facts as those at issue in the pending Tribal Court action between the Tribe and Bradley. If Bradley did not breach the contract, it necessarily implicates the reasonableness of Fidelity's unilateral decision to take over the project and complete it. The fact that the current issue is one step removed from the original contract between Bradley and the Tribe has no bearing on the Tribe's interest in self-government. *Bank One, supra.* **(where a door-to-door salesman sold the home satellite systems and arranged for the purchasers to obtain credit from Bank One).**

█ Nor is a different result required because there is no pending action in tribal court between Fidelity and Bradley. "The tribal exhaustion doctrine is not jurisdic-

tional in nature, but, rather, is a product of comity and related considerations. Where applicable, this prudential doctrine has force whether or not an action actually is pending in a tribal court. Moreover, the doctrine applies even though the contested claims are to be defined substantively by state or federal law." *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 31–32 (1st Cir. 2000) ("**Civil disputes arising out of the activities of non-Indians on reservation lands almost always require exhaustion if they involve the tribe.**" (Citations omitted)); *United States v. Tsosie*, 92 F.3d 1037, 1041 (10th Cir.1996) ("**[T]he exhaustion rule does not require an action to be pending in tribal court.**"); *Crawford v. Genuine Parts Co., Inc.*, 947 F.2d 1405, 1407 (9th Cir.1991); *Tom's Amusement Co. Inc. v. Cuthbertson*, 816 F.Supp. 403 (W.D.N.C.1993); *see also, Garcia v. Akwesasne Housing Auth.*, 268 F.3d 76, 82–83 (2nd Cir.2001) (**noting that the existence of a tribal court to which deference should be granted was doubtful and declining to defer to exhaustion before the tribal council**).

The undersigned therefore concludes that the Tribal Court should first entertain this dispute.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion to dismiss is **ALLOWED,** and this matter is hereby **DISMISSED WITHOUT PREJUDICE.**